```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD JAMES BAYLISS            :       CIVIL ACTION
                                :
          v.                    :
                                :
BOROUGH OF DARBY, et al.        :       NO. 15-5739
```

MEMORANDUM

Bartle, J.                                      November 2, 2016

        Before the court is the motion of defendants Police Chief Robert Smythe and Police Officer Joseph Spence for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in this civil rights action under 42 U.S.C. § 1983 and Pennsylvania state law.  In support of their motion, they argue that they are entitled to qualified immunity.

        Edward James Bayliss originally brought this lawsuit against the Borough of Darby, the Darby Borough Police Department, Chief Smythe, Officer Spence, and "John Doe Defendants Nos. 1-10."  After the defendants moved to dismiss, Bayliss filed his first amended complaint.  There, he named Chief Smythe, Officer Spence, Darby Borough, and "John Does Nos. 1-10" as defendants but omitted the Darby Borough Police Department.

        The defendants again moved to dismiss.  We granted the motion of Chief Smythe to dismiss any claims for punitive damages against him in his official capacity.  We also granted

the motion of the Borough of Darby to dismiss the punitive damages claim against it.  We otherwise denied the motion to dismiss.

The parties have since filed a stipulation of dismissal of the only claim brought against the Borough of Darby.

The claims remaining in this action are against Chief Smythe and Officer Spence.  Specifically, Bayliss alleges malicious prosecution, wrongful arrest, selective enforcement, and civil rights violations under § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  He also asserts malicious prosecution and wrongful arrest in violation of Pennsylvania state law.

I.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant.

See id. at 252.  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  Id.

When ruling on a motion for summary judgment, we may only rely on admissible evidence.  See, e.g., Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 94-95 (3d Cir. 1999).  We view the facts and draw all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).  However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

## II.

The following facts are undisputed or viewed in the light most favorable to the plaintiff.  On December 2, 2014, with the assistance of a constable, Bayliss lawfully evicted Kathleen Hauprich[1] and her adult daughter Bridget Ford from their apartment in the multi-family apartment building that Bayliss owned in Darby, Pennsylvania.  During that eviction, Hauprich and Ford became combative, and the constable called the Darby Police for assistance.  Although the police officers were prepared to arrest Hauprich and Ford, Bayliss asked the officers

---

1.   Kathleen Hauprich was previously known as Kathleen Ford.

to give them enough time to collect their medicine and personal items before leaving the property of their own volition.  While the police officers were present, Hauprich told Bayliss:  "We're going to kick the fucking door in tonight."  Later that evening, someone broke down the door to the building.

The following day, Bayliss went to the building in the early afternoon to repair the door.  While he was inside finishing the repair, someone began to bang on and kick the door from the outside.  Worried that it might be the person who had broken down the door the night before, Bayliss pulled out his licensed firearm and held it at his side.  He opened the door to find Eric Coates standing in front of him.  Although Bayliss had previously encountered Coates in the neighborhood, Bayliss did not immediately recognize him.  Ford was standing approximately twenty-five feet behind Coates.  Coates told Bayliss that they were seeking to gain access to the apartment so that Ford could gather her personal belongings.  Only after Coates explained the purpose of their visit did Bayliss recognize Coates and holster his weapon.  After taking a few minutes to consider their request, he allowed them to enter the building and begin to gather Ford's belongings.

In the meantime, the Darby Police had been alerted that a man had come to the door waiving a gun.  Officer Spence and several other officers responded to the apartment building.

Bayliss had no prior relationship to any of those officers. When the officers arrived, Coates and Ford were collecting Ford's personal effects from the apartment while Bayliss watched. Coates stated to the officers "it's cool, it's cool" and "everything's fine." The officers removed Bayliss from the apartment and confiscated his firearm. Bayliss provided his driver's license and license to carry a firearm. According to the Affidavit of Probable Cause, both Coates and Ford, in written and oral statements, told the officers that Bayliss had pointed that gun at them when answering the door.

Chief Smythe arrived at the apartment building at some point after the other officers. He and Bayliss had known one another for decades. In the early 1990s, Chief Smythe had told Bayliss to "stay the fuck out of Darby or I am gonna lock you the fuck up, Jap." Bayliss and Chief Smythe had not had another confrontation since that incident approximately twenty-five years ago.

Shortly after arriving at the apartment building, Chief Smythe instructed Officer Spence to arrest Bayliss. Officer Spence then told Bayliss "my boss says I have to take you in" and placed him under arrest. Officer Spence had not requested a statement from Bayliss prior to making the arrest.

Bayliss's motor vehicle, which was locked and lawfully parked outside the apartment building, was towed because Officer

-5-

Spence determined that there was a high likelihood that someone might break into it and steal the tools inside if it was left where it had been parked.

Bayliss was transported to the police station and placed in a cell. He was provided a long sleeve t-shirt and pants. The temperature in the cell block was very cold, and Bayliss was not afforded an opportunity to use the telephone. Approximately two hours later, Officer Spence took a statement from Bayliss, and an hour or two after that interview, Bayliss complained of chest pains. He was transported to the hospital, where he remained until the following morning. He was then arraigned and released on bail on his own recognizance.

Bayliss was charged with simple assault, aggravated assault, use of a firearm in the commission of a crime, reckless endangerment, and harassment. At a preliminary hearing before a judge in the Magisterial District Court in Delaware County, Coates contradicted the oral and written statements that he had previously made to police and testified that he did not know that Bayliss had a gun but instead believed that Bayliss was holding a drill. Consistent with her prior statements to the police, Ford testified that Bayliss had answered the door and pointed the gun at her and Coates. Following the hearing, the charges against Bayliss were dismissed.

Bayliss is of Irish, English, and Japanese descent. His Japanese ancestry is attributable to his mother, who is Japanese. Arrest documents identified Bayliss's race as "Asian" but no one asked Bayliss to provide his race or ethnicity at the time of his arrest. Bayliss asserts that his Japanese ancestry was "a fact not readily apparent based on [his] name or physical appearance." Nevertheless, Chief Smythe knew that Bayliss's mother was Japanese because Chief Smythe had known Bayliss and his family for decades.

## III.

We begin with Bayliss's claims that Chief Smythe and Officer Spence subjected him to malicious prosecution and wrongful arrest under Pennsylvania state law and 42 U.S.C. § 1983 in violation of the Fourth Amendment of the United States Constitution as incorporated by the due process clause of the Fourteenth Amendment. "To recover under 42 U.S.C. § 1983, [the plaintiff] must establish that a state actor engaged in conduct that deprived [him] of 'rights, privileges, or immunities' secured by the constitution or laws of the United States." Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000) (quoting Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)).

Chief Smythe and Officer Spence raise the defense of qualified immunity. Under the doctrine of qualified immunity, government officials are shielded "from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" See Anderson v. Creighton, 483 U.S. 635, 638 (1987).

The qualified immunity doctrine requires a two-step analysis.  First, we must determine "whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right."  See Pearson, 555 U.S. at 232.  Second, we must decide whether the constitutional right at issue was "clearly established" at the time of the alleged misconduct. See id.  Unless the answer to both questions is "yes," the official is entitled to qualified immunity.  See id.  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Id. at 236.

Here, our analysis begins with the first prong.  "We arrange the facts in the light most favorable to the plaintiff, and then determine whether, given precedent, those 'facts,' if true, would constitute a deprivation of a right."  Wilson, 212 F.3d at 786.  With regard to his federal and state law

claims of wrongful arrest, Bayliss must prove that probable cause was lacking. See Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995); Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994). The wrongful arrest claims fail if the officers had probable cause to believe that he had violated the law when arresting him.

Bayliss cannot establish that the defendants acted without probable cause. "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) (quoting Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995)). "Probable cause to arrest requires more than mere suspicion, however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." Orsatti, 71 F.3d at 482-83. "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." See Hill v. California, 401 U.S. 797, 804 (1971). Upon determining that probable cause to arrest exists, an officer has "no further constitutional duty to continue [his] investigation in an attempt to unearth potentially exculpatory evidence undermining the probable cause determination." See Lincoln v. Hanshaw,

375 F. App'x 185, 190 (3d Cir. 2010) (citing Baker v. McCollan, 443 U.S. 137, 145-46 (1979)).

"Although the question of probable cause is generally a question for the jury, a district court may conclude on summary judgment that probable cause exists as a matter of law if the evidence, when viewed in the light most favorable to the plaintiff, reasonably would not support a contrary factual finding." Minatee v. Philadelphia Police Dep't, 502 F. App'x 225, 228 (3d Cir. 2012) (citing Merkle, 211 F.3d at 788–789). In this regard, "it is irrelevant to the probable cause analysis what crime a suspect is eventually charged with . . . or whether a person is later acquitted of the crime for which she or he was arrested." See Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005).

Here, even viewing the evidence in the light most favorable to Bayliss, there was more than sufficient evidence for officers to arrest him on charges of simple assault, aggravated assault, use of a firearm in the commission of a crime, reckless endangerment, and harassment.[2]  A person is guilty of the crime of simple assault if he "attempts by physical menace to put another in fear of imminent serious bodily injury." See 18 Pa. Cons. Stat. § 2701. A person is

---

2. The record is silent as to whether the defendants first sought approval of these charges from the Delaware County District Attorney's office.

guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." See § 2702. In addition, § 6103 renders it unlawful to commit aggravated assault while armed with a firearm. A person has committed the crime of reckless endangerment "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury" and the crime of harassment if he "with intent to harass, annoy or alarm another . . . strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same." See § 2705 and 2709.

      Certainly the arresting officer, Officer Spence, could have reasonably believed that Bayliss committed these offenses. See Merkle, 211 F.3d at 788; Orsatti, 71 F.3d at 482. The police, having been alerted that a man had come to the door waving a gun, arrived on the scene and encountered Bayliss armed with a gun. After retrieving the weapon, the officers interviewed Coates and Ford. In written and oral statements to the police, Coates and Ford stated that Bayliss had come to the door shouting and pointing a gun at them. Bayliss admitted that he "may have been shouting at Eric [Coates]" and that he answered the door holding a gun. Bayliss also stated that he

did not put his gun away until he came to understand that Coates and Ford simply sought to collect Ford's belongings from the apartment. Bayliss cannot overcome his burden to prove that probable cause was lacking, and "the evidence, when viewed in the light most favorable to the plaintiff, reasonably would not support a contrary factual finding.'" See Minatee, 502 F. App'x at 228.

Bayliss makes several attempts to undermine probable cause. First, he notes that Coates subsequently changed his statement at the preliminary hearing, where he testified that he did not know that Bayliss had a gun and thought Bayliss was instead holding a drill when he answered the door. Although this new testimony may have provided a reason ultimately to dismiss the charges, as was done in this case, it does not undermine probable cause at the time of the arrest.

Second, Bayliss claims to have held the gun only at his side during the encounter. Officer Spence could reasonably rely on the statements of Coates and Ford that Bayliss had pointed the gun at them, regardless of whether Bayliss admitted to doing so, in determining "that an offense has been or is being committed by the person to be arrested." See Merkle, 211 F.3d at 788 (quoting Orsatti, 71 F.3d at 482). An officer certainly has probable cause to arrest an individual even if that individual does not confess his involvement in the offense.

Third, it makes no difference whether Officer Spence took Bayliss's statement before or after his arrest. Either way, the statements of Coates and Ford created probable cause to arrest Bayliss.

Fourth, Bayliss argues that he was not placed in custody until Chief Smythe arrived at the scene and ordered his arrest. This is immaterial. Officer Spence had probable cause to arrest Bayliss for the reasons already stated.

Finally, Bayliss asserts that he is entitled to relief because he acted pursuant to the "castle defense," which allows a person to defend himself in his own home under certain circumstances. Such a defense is available to a defendant at a criminal proceeding following arrest. It does not undermine probable cause or in any other way preclude arrest or prosecution.

Bayliss also has brought state and federal claims of malicious prosecution. Our Court of Appeals has stated:

> [t]o prevail in a Section 1983 action malicious prosecution action, a plaintiff must show:
>
> (1) the defendants initiated a criminal proceeding;
>
> (2) the criminal proceeding ended in the plaintiff's favor;
>
> (3) the proceeding was initiated without probable cause;

>     (4) the defendants acted maliciously or for
>     a purpose other than bringing the plaintiff
>     to justice; and
>
>     (5) the plaintiff suffered a deprivation of
>     liberty consistent with the concept of
>     seizure as a consequence of a legal
>     proceeding.

DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).  Similarly, "[u]nder Pennsylvania law, the elements of a malicious prosecution claim are that the defendant (1) instituted the proceedings (2) without probable cause with (3) actual malice and (4) that the proceedings terminated in favor of the plaintiff."  See Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993) (citing Kelley v. Gen. Teamsters Local Union 249, 544 A.2d 940, 941 (Pa. 1988)).  Both the state and federal claims of malicious prosecution require the plaintiff to show that the defendants acted without probable cause.  For the reasons explained above, Bayliss cannot prove that probable cause was lacking.

      Viewing the facts in the light most favorable to Bayliss, there is no evidence to establish that Chief Smythe and Officer Spence violated his state or federal rights to be free of wrongful arrest and malicious prosecution.  Because Bayliss cannot establish that Chief Smythe or Officer Spence committed a constitutional violation, we need not inquire as to whether any

constitutional right of Bayliss involved here was clearly established.

## IV.

We next turn to the claims of selective enforcement and equal protection under § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. Although Bayliss brought these claims in two separate counts in his complaint, these claims are interchangeable, and we will deal with them together.

The equal protection clause of the Fourteenth Amendment prohibits the discriminatory enforcement of facially valid laws. See Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005). "To establish a selective-enforcement claim, a plaintiff must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) 'that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right.'" Dique v. N.J. State Police, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (quoting Hill v. City of Scranton, 411 F.3d at 125).

The first element, which is "[a]n essential element of a claim of selective treatment under the Equal Protection Clause," requires the plaintiff to present evidence that similarly situated parties were treated differently than he was.

See <u>Startzell v. City of Philadelphia</u>, 533 F.3d 183, 203 (3d Cir. 2008). "Persons are similarly situated under the Equal Protection Clause when they are alike in 'all relevant aspects.'" <u>Id.</u> (citing <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 10 (1992)). Where the plaintiff "has not provided evidence of others treated differently who were similar to him in 'all relevant respects,'" summary judgment is appropriate because the plaintiff "has failed to provide evidence necessary to establish the required elements of a selective enforcement claim." <u>See</u> <u>Dombrowky v. Stewart</u>, 555 F. App'x 195, 197 (3d Cir. 2014).

      Bayliss does not cite to any evidence that a similarly situated individual has been or would have been treated differently than he was. Instead, he only offers evidence concerning the second element of the selective enforcement claim, which requires that he prove that the alleged selective treatment was based on an unjustifiable factor. In this regard, he claims that the defendants acted with racial animus and "malicious meanness." He cites to a conversation that took place approximately twenty-five years ago during which Chief Smythe allegedly referred to him as "Jap." He also notes that the police report indicated that he was "Asian" despite his race not being supplied to the arresting officers or visibly apparent. However, without evidence to establish the essential

element of his selective treatment claim, no reasonable factfinder could return a verdict in his favor.

V.

Accordingly, we will grant the motion of Chief Robert Smythe and Officer Joseph Spence for summary judgment and enter judgment in their favor.